UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RICHARD G. WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 10-CV-3179 |
| LARRY PHILLIPS, SHAN JUMPER, | ) | |
| JULIE OBERHAUSEN, EUGENE | ) | |
| McADORY, AIMEE WILCZYNSKI, | ) | |
| ROBERT OLT,  GUY GROOT, and | ) | |
| JENNIFER KING, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, is detained in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act.  He challenges the refusal to allow him visitation with his relatives who are minors.  Before the Court are Defendants' respective motions for summary judgment.

## SUMMARY JUDGMENT STANDARD

1

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material]  fact." Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists.  Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).  "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment."  McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved

in the nonmovant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986).  A genuine dispute of material fact exists when a
reasonable juror could find for the nonmovant.  Id.

## UNDISPUTED FACTS

In December 1998, Plaintiff was sentenced for aggravated criminal
sexual abuse of an unrelated female minor between the ages of 13 and
16.  Plaintiff testified in his deposition that this crime was essentially
"statutory rape" because the female was 16 years old and had consented.
(Plaintiff's Dep. p. 43).  Plaintiff was released from prison in September
1999 and then detained in the custody of the Department of Human
Services pursuant to the Illinois Sexually Violent Persons Act.  Plaintiff
testified in his deposition that he had been convicted in New York for a
similar offense involving consensual sex with an unrelated 17-year-old
female.  Defendants offer no further information about Plaintiff's sexual
crimes, so the Court accepts Plaintiff's version of events for purposes of
this order only.  Plaintiff has also been convicted of a felony battery in
Indiana, but there is no indication that crime was sexually motivated.

Since the Fall of 1999, Plaintiff has been in the state's treatment and detention facility, except for a seven month stint in prison for assaulting a guard at the treatment facility. (Plaintiff's Dep. p. 11-12). He is now detained in the Rushville Treatment and Detention Facility. The record is not clear on whether Plaintiff has yet been civilly committed as a sexually violent person or is being held in custody pending those proceedings. Plaintiff testified in his deposition that he was "still fighting" his commitment proceedings. (Plaintiff's Dep. p. 50); *see also* <u>People v. Webb</u>, 393 Ill.App.3d 478 (3rd Dist. 2009)(rejecting Webb's challenge to being remanded to DHS and noting that Webb had not yet been committed).

To obtain visitation privileges at the facility, a resident must submit a request listing his desired visitors, his relationship to them, and disclosing whether any of the visitors are minors. According to the DHS regulations attached to Plaintiff's response, the "Visitors Review Team . . . determine[s], from security and clinical perspectives, the appropriateness of the requested visitor." (d/e 44, p. 24-25). The

4

regulations provide that the members of the Visitors Review Team are administrative, clinical, and security employees appointed by the Director of the facility.  (d/e 44, p. 24).  In practice, however, the resident's clinical treatment team first reviews the request.  If the clinical team denies the visit,  "a TDF official will not overturn the treatment team's denial of a resident's request to visit with a minor."  (d/e 41-1, ¶ 6).  If the clinical team approves the visit, the request is then reviewed by the security director or the program director.

Plaintiff is permitted to have visits from adult friends and family, but not from minors, even minors related to him.  Plaintiff's children all appear to be adults, but he has eight minor grandchildren.  Whether Plaintiff has minor nephews and nieces is unclear.  At one point in his deposition, Plaintiff testified that he did not have minor nieces and nephews, but other parts of the record seem to indicate that he does. (Plaintiff's Dep. pp. 16, 45; d/e 47-3, p. 1).  However, Plaintiff does have many minor grandnieces and grandnephews.

Plaintiff has twice requested to visit with relatives who are minors.

Both requests were denied by clinical team members.  The first request

occurred in early 2006, when Plaintiff asked to see his adult daughter

and her minor son.  The form shows that the clinical director at the time

(whose name has been redacted) approved the visit with Plaintiff's adult

daughter, but not with Plaintiff's grandchild.  (d/e 41-2, p.17).  The age

of this minor is not in the record.

Plaintiff tried again in 2009, asking to visit with two of his nephews

or grandnephews (ages 11 and 2 years, respectively), and a niece or

grandniece (age 9 years).  His request to see the minors was denied by

Plaintiff's treatment team.  According to Defendant Groot, Plaintiff's

treatment team at the time consisted of Groot and Defendants

Oberhausen, Wilczynski, Tucker, and King, all clinical therapists.

Plaintiff contends that Defendant Olt was also a part of the treatment

team.  The denial form was signed by Plaintiff's primary therapist, whose

name is redacted, and the comments on the form are illegible.  (d/e 41-2,

p. 18).

Defendant Groot avers that "[t]he Treatment Team carefully

considered the risks and benefits of allowing the Plaintiff to have

visitations with an 11-year-old boy, 9-year-old girl, and a 2-year-old boy

pursuant to the Procedure for Approving Visitation with Minors . . . .

Based on the Treatment Team's knowledge of Plaintiff's prior conviction,

and Plaintiff's therapeutic status, we believed that allowing the visitations

would be counterproductive to Plaintiff's therapeutic goals."  (Groot Aff.,

¶¶ 10-11).  Groot avers that the decision was based solely on "therapeutic

goals of rehabilitating Plaintiff" and were based on the team's "clinical

judgment, training, and education."

The facility's "Procedure for Approving Visitation with Minors"

provides in relevant part:

> Treatment team reviews resident responses to this
> questionnaire to assess the clinical appropriateness of the
> proposed minor visit.  Resident's level of treatment
> involvement and progress in treatment are considered when
> reviewing this information.  If treatment team decides the
> minor visit is clinically indicated, the procedure for approving
> visitation with minors continues.  If not, resident is given an
> explanation for the team's decision and recommendations
> from the treatment team for moving toward an appropriate
> minor visit in the future, if appropriate.

(d/e 47-6, p. 1).

7

## ANALYSIS

Defendant Phillips, the former program director, and Defendant McAdory, the security director, argue that the statute of limitations bars any claim arising from the 2006 visitation denial. However, Plaintiff is challenging the ongoing denial of visitation with his minor relatives. His 2006 and 2009 requests are merely examples of that ongoing denial. There is no suggestion that Plaintiff might now be allowed to visit any minor relatives. The Court does not see how the statute of limitations could bar an ongoing claim.

However, Defendants Phillips and McAdory are correct that they bear no personal responsibility for the visitation restriction. George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."); Johnson v. Snyder, 444 F.3d 579, 583-84 (7th Cir.2006)(liability under § 1983 requires personal involvement). Plaintiff's clinical therapists are responsible for the restriction. They were the ones who recommended against minor visitors, a recommendation that is not disturbed by the administrators of

the facility.  Plaintiff argues that DHS regulations require the
administrators to participate in this decision, but the failure to follow
state regulations or internal procedures does not violate federal law.
Guarjardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010)("[A]
violation of state law is not a ground for a federal civil rights suit.").
Phillips and McAdory have no constitutional duty to independently
review or overturn the therapists' decision.  They may defer to the
therapists' professional determination that visits with minors are
contraindicated for Plaintiff's rehabilitation.

Nevertheless, McAdory and Phillips should remain in the case in
their official capacities for purposes of injunctive relief.  Plaintiff seeks an
order directing Defendants to allow him visits with his minor relatives,
which requires the approval of the facility and/or security director as well
as the therapists.  If the therapists' decision fails constitutional scrutiny,
Plaintiff would still need the approval of the facility director and/or the
security director in order to obtain his requested relief.

As for the summary judgment by the clinical therapists, the analysis

is more complicated.  The therapists first contend that Plaintiff has no

constitutional liberty interest in visits with minor relatives because the

facility's internal procedures for handling those requests do not create

such an interest.  The Court has no quarrel with that point, but the point

is irrelevant.  In this fact scenario, the question is whether the interest

arises from the Constitution itself, not from state mandates.[1]  The

therapists do not address whether Plaintiff has a constitutional interest in

visiting his minor relatives which arises from the Constitution itself.

Outside of the prison arena, the Supreme Court has discussed "a right to

maintain certain familial relationships, including association among

members of an immediate family and association between grandchildren

and grandparents."  Overton v. Bazzetta, 539 U.S. 126, 131 (2003);

Arsberry v. Illinois, 244 F.3d 558, 565 (7th Cir.  2001)("It is conceivable

(no stronger statement is possible in the current state of the case law)

that the constitutional concept of liberty may encompass a limited right

---

[1]Plaintiff argues that the facility has violated its own program directives by
failing to have a "visitors review team" review visit requests.  However, a federal court
cannot compel compliance with state law, and a violation of state law does not make
out a federal claim.  Guarjardo-Palma, 622 F.3d at 806 (7th Cir. 2010).

to make or receive prison visits involving family members.") <u>Mayo v.</u>
<u>Lane</u>, 867 F.2d 374, 375 (7th Cir. 1989)(claim that "natural liberty
includes a right of association with members of her family, such as
grandnephew" in prison is "not a frivolous argument.").

However, if such a right does exist in the context of a detention
center for sexually violent persons, the right is subject to the legitimate
concerns of the facility administrators and the professional deference
afforded them.  <u>Id.</u> at 132.  For example, the Supreme Court addressed
prison visitation restrictions in <u>Overton v. Bazzetta</u>, 539 U.S. 126, 131
(2003).  The visitation restrictions in <u>Overton</u>  included a total ban on
visits from minor nieces and nephews.  The Supreme Court side-stepped
the question of whether prisoners had a constitutional interest in those
visits, concluding that, in any event, the ban was rationally related to a
legitimate interest in reducing the number of child visitors to ameliorate
staffing and resource shortages.  539 U.S. at 133.  The Supreme Court
also reasoned that "[w]e must accord substantial deference to the
professional judgment of prison administrators, who bear a significant

responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Id. at 132.

Like Overton, the inquiry in this case ends if the therapists' decision is rationally related to a legitimate interest in Plaintiff's rehabilitation.  However, Defendant Groot's affidavit is too conclusory to make this determination.  Groot provides no factual detail to support his conclusions.  For example, the minors with whom Plaintiff seeks visitation do not appear to fit Plaintiff's "victim profile."  Plaintiff has no history of sex crimes against boys, nor any history of sex crimes against females who are related to him.  According to Plaintiff, his sex crimes involved consensual sex with unrelated 16 and 17-year-old females.  Further, there is no explanation of what, if anything, Plaintiff can do in his rehabilitation efforts to gain visits with his minor relatives.  No explanation is given regarding the purported "information and opinions" developed during Plaintiff's therapy.  The other therapists offer no affidavits explaining their roles in the denial, and Groot does not set forth

his professional qualifications.  Defendant Jumper, the clinical director,

asserts that he was not involved, but he offers no affidavit to counter

Plaintiff's assertion that Jumper signs off on the treatment team's

decision.   In sum, the therapists have failed to adequately explain why,

in their opinion, "visitations would be counterproductive to Plaintiff's

therapeutic goals."  (Groot Aff. ¶ 11).  Additionally, their brief does not

discuss any of the <u>Turner</u> factors that must be considered.  <u>Overton</u>, 529

U.S. at 132-135.

Since the record is to bare to answer these basic questions, the

Court cannot tell if addressing the existence and scope of the underlying

constitutional right is necessary, much less determine if qualified

immunity applies.  Accordingly, the therapists will be directed to file a

supplemental summary judgment motion.

IT IS THEREFORE ORDERED:

1) The motion for summary judgment by Defendants Phillips and

McAdory is granted in part and denied in part. (d/e 41).  Defendants

Phillips and McAdory are granted summary judgment in their individual

capacities.  Phillips and McAdory remain in their official capacities for the purpose of injunctive relief.

2) Pursuant to Fed. R. Civ. P. 25(d), the successor for Phillips and McAdory is automatically substituted if Phillips or McAdory no longer hold their respective positions.  By January 16, 2012, counsel for Defendants Phillips and McAdory is directed to inform the Court the name of said Defendants' successors, if any.

3) The motion for summary judgment by Defendants Jumper, Oberhausen, Wilczynski, Olt, Groot, and King is denied (d/e 47).

4) By February 29, 2012, Defendants Jumper, Oberhausen, Wilczynski, Olt, Groot, and King are directed to file a well-supported supplemental summary judgment motion in accordance with this opinion.

ENTERED:  December 30, 2011

FOR THE COURT:

s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE

14