UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RICHARD G. WEBB,                         )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )
                                         )        10-CV-3179
LARRY PHILLIPS, SHAN JUMPER,             )
JULIE OBERHAUSEN, EUGENE                 )
McADORY, AIMEE WILCZYNSKI,               )
ROBERT OLT,  GUY GROOT, and              )
JENNIFER KING,                           )
                                         )
        Defendants.                      )

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, is detained in the Rushville Treatment

and Detention Center pursuant to the Illinois Sexually Violent Persons

Act.  He seeks visitation with his minor grandchildren, nieces, and

nephews.

On December 30, 2011, the Court dismissed Defendants Phillips

and McAdory in their individual capacities, but they remain as

1

Defendants in their official capacities for the purpose of injunctive relief.

The Court also denied the motion for summary judgment by the

remaining Defendants, concluding that Defendant Groot's affidavit was

too conclusory to determine whether the denial of visits with minors was

rationally related to a legitimate objective such as safety or rehabilitation.

The Court ordered Defendants to file a supplemental motion for

summary judgment which is now before the Court.

After careful consideration of the parties' submissions, the Court

concludes that Defendants have demonstrated that the restriction is

rationally related to legitimate concerns of safety and rehabilitation.

Defendants have further demonstrated that the decision was the product

of the exercise of professional judgment, and that the factors in <u>Turner v.</u>

<u>Safley</u>, 482 U.S. 78, 89 (1987) weigh in their favor.  Accordingly, the

supplemental motion for summary judgment must be granted.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A

movant may demonstrate the absence of a material dispute through

specific cites to admissible evidence, or by showing that the nonmovant

"cannot produce admissible evidence to support the [material]  fact."

Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant

may not simply rest on his or her allegations in the complaint, but

instead must point to admissible evidence in the record to show that a

genuine dispute exists.  Id.; Harvey v. Town of Merrillville, 649 F.3d 526,

529 (7th Cir. 2011).  "In a § 1983 case, the plaintiff bears the burden of

proof on the constitutional deprivation that underlies the claim, and thus

must come forward with sufficient evidence to create genuine issues of

material fact to avoid summary judgment." McAllister v. Price, 615 F.3d

877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light

most favorable to the nonmovant, with material factual disputes resolved

in the nonmovant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  A genuine dispute of material fact exists when a

reasonable juror could find for the nonmovant.  Id.

## FACTS

Plaintiff was detained under the Illinois Sexually Violent Persons Act in 1999, after a state court judge found probable cause that Plaintiff will be adjudicated a sexually violent person under Illinois law.  He is currently detained in the Rushville Treatment and Detention Center. Nearly thirteen years after the probable cause finding, Plaintiff still has not had a trial on whether he actually is a sexually violent person, though 725 ILCS 207/30(c) requires an adjudication within 120 days of the probable cause finding, absent Plaintiff's consent or good cause.  The reason for the delay is not in the record.  Plaintiff does not challenge the delay here, and, in any event, such a challenge would belong in Plaintiff's detention hearings, appeals, or in a federal habeas action.

What Plaintiff does challenge is that he is not permitted visitation with any of his minor relatives—his grandchildren, nieces, and nephews. This decision was made by Defendant Groot, who was the leader of Plaintiff's clinical "treatment team" at the facility, and by Stephen

Hansen, a licensed professional counselor who was Plaintiff's primary therapist in 2009. Groot and Hansen aver that other members of the team also participated in the decision, but no affidavits were presented by the other team members, and their signatures are not on the denial.

In 2006, Plaintiff was denied a request to visit his minor grandchild, and in 2009, Plaintiff was denied a request to visit two minor nephews and a minor niece. Defendants focus on the 2009 request, and Plaintiff does not to appear to have made any requests after that date. However, a fair reading of the record suggests that any future requests would be futile because Plaintiff's restriction on visits with minors remains in place.

According to Stephen Hansen, Plaintiff's former primary therapist, Plaintiff was denied visits with his minor relatives because of Plaintiff's criminal and sexual history, Plaintiff's refusal to consent to sex offender treatment, and Plaintiff's refusal to take responsibility for his actions. Mr. Hansen avers that, though Plaintiff's minor nephews may not fit Plaintiff's "victim profile," the nephews might still be a target:

> [I]t is not uncommon for a person with the mental disorder
> suffered by the Plaintiff to abuse irrespective of sex or age.  In
> fact, Mr. Webb's diagnosis is "Paraphilia Not Otherwise
> Specified, Sexually Attracted to Non-Consenting Females,
> Nonexclusive type."  Nonexclusive type refers to the fact that
> Mr. Webb is not solely attracted to non-consent females.  Mr.
> Webb also considers himself a bi-sexual.

(Hansen Aff. ¶ 15, d/e 60-1.)  Mr. Hansen further avers that Plaintiff

"refused to complete the Penile Plethysmograph evaluation (PPG) which

would have provided insight as to what triggers his sexual arousal.

Without this information there was a significant risk that Plaintiff could

sexually abuse children irrespective of age and sex if given the

opportunity."  Id., ¶ 17.  Mr. Hansen also noted the state court's finding

of probable cause that Plaintiff is a sexually violent person weighed in the

decision.  Id., ¶ 9.

Mr. Hansen avers that Plaintiff has a:

> long history of sexual assaults.  Mr. Webb's offense history
> dates back to 1984 and includes numerous charges and
> convictions for sexual offenses in six states against adolescent
> females.  The records indicate threats, intimidation, beating
> and aggressive and sexual use of foreign objects.

(Hansen Aff. ¶ 8, d/e 60-1.)  In Mr. Hansen's opinion, Plaintiff's "version

of his crimes is clearly contradicted by the criminal history provided to

his treatment team."  Id. at ¶ 12.

Attached to the supplemental summary judgment motion is the

psychological examination conducted in relation to Plaintiff's detention

proceedings.  The criminal history part of that report reveals charges and

arrests for attempted sexual assaults of young women, aggravated

criminal sexual abuse of a 16 year old girl, sexual intercourse with 14 year

old girls, indecent liberties with a minor, rape and sodomy of a 14 year

old girl, kidnapping and forcible rape of a female of unidentified age, rape

of a male of unidentified age, and rape of a female adult.  (6/25/10

Sexually Violent Persons Commitment Act Psychological Examination of

Richard Webb, pp. 5-24, d/e 60-3.)  The report contains disturbing

details of the abuse allegations by some of Plaintiff's victims.  The report

characterized Plaintiff as indifferent and in denial.   According to the

report, Plaintiff:

> maintained that charges were dismissed, even when presented
> with the relevant court documents.  He reportedly stated he
> regretted the "whole damn rap sheet" when asked if he felt
> regret for any of his offenses.  He "demonstrated an absence

7

of empathy for the 15 year-old victim of his current offense, as he 'couldn't tell' what effect his offense had on her, and stated, 'that individual was in an environment she shouldn't have been in.'"

Id. at p. 7.

## ANALYSIS

The Court set forth the applicable legal standard in the prior order

denying summary judgment:

Outside of the prison arena, the Supreme Court has discussed "a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents." Overton v. Bazzetta, 539 U.S. 126, 131 (2003); Arsberry v. Illinois, 244 F.3d 558, 565 (7th Cir. 2001)("It is conceivable (no stronger statement is possible in the current state of the case law) that the constitutional concept of liberty may encompass a limited right to make or receive prison visits involving family members.") Mayo v. Lane, 867 F.2d 374, 375 (7th Cir. 1989)(claim that "natural liberty includes a right of association with members of her family, such as grandnephew" in prison is "not a frivolous argument.").

However, if such a right does exist in the context of a detention center for sexually violent persons, the right is subject to the legitimate concerns of the facility administrators and the professional deference afforded them. Id. at 132. For example, the Supreme Court addressed prison visitation restrictions in Overton v. Bazzetta, 539 U.S. 126, 131 (2003). The visitation restrictions in Overton included a

total ban on visits from minor nieces and nephews.  The
Supreme Court side-stepped the question of whether
prisoners had a constitutional interest in those visits,
concluding that, in any event, the ban was rationally related
to a legitimate interest in reducing the number of child
visitors to ameliorate staffing and resource shortages.  539
U.S. at 133.  The Supreme Court also reasoned that "[w]e
must accord substantial deference to the professional
judgment of prison administrators, who bear a significant
responsibility for defining the legitimate goals of a corrections
system and for determining the most appropriate means to
accomplish them."  Id. at 132.

Like Overton, the inquiry in this case ends if the
therapists' decision is rationally related to a legitimate interest
in Plaintiff's rehabilitation. . . .

(Court's 12/30/11 Order, d/e 51.)  The factors set forth in Turner v.

Safley, 482 U.S. 78 (1987) guide the analysis of whether the restriction

is rationally related to a legitimate government interest. Those factors

are:  1) the logical connection between the restriction and the

government interest; (2) the existence of alternative methods for

exercising the right at stake; (3) the negative impact that accommodating

the right would have on the facility; and, 4) the existence of "ready

alternatives" to the restriction.  See Overton, 539 U.S. at 132 (citing

Turner, 482 U.S. at 89-91).

After careful consideration of the parties' submissions, the Court concludes that Defendants have demonstrated that Plaintiff's ban on visiting his minor nieces, nephews, and grandchildren is rationally related to legitimate interests in Plaintiff's rehabilitation and the safety of the minors. This conclusion is based primarily on the affidavit of Mr. Hansen and the documents attached to his affidavit. Mr. Hansen avers that visits with minors would be countertherapeutic for Plaintiff and potentially dangerous for the minors in light of Plaintiff's criminal and sexual history, Plaintiff's refusal to accept responsibility for that history, Plaintiff's inability to empathize with his victims, Plaintiff's decision not to participate in sex offender therapy, and Plaintiff's refusal to take a PPG to enable a more accurate and current evaluation. Mr. Hansen also relied on the report prepared for Plaintiff's probable cause hearing which found, to a reasonable degree of certainty, that Plaintiff is substantially probable to commit sexually violent acts.

While Plaintiff debates the accuracy of Mr. Hansen's conclusions,

those conclusions are exactly the kinds of decisions committed to the professional judgment of Plaintiff's therapists, not to a court or a jury. Youngberg v. Romeo, 457 U.S. 307, 321 (1982)(persons involuntarily committed entitled to exercise of professional judgment); *see* Stojanovic v. Humphreys, 309 Fed.Appx. 48 (7th Cir. 2009)(unpublished)(upholding prison's ban on sexual offender's visitation with minor daughter and niece where sex offender was not participating in treatment and offender admitted to raping two children); Wirsching v. Colorado, 360 F.3d 1191, (10th Cir. 2004)(refusal to allow sex offender to visit with daughter upheld where offender's refusal to participate in sex offender treatment rendered proper evaluation impossible, according to defendants). Courts must defer to the exercise of professional judgment, disturbing it only if professional judgment has not been exercised. Youngberg, 457 U.S. at 323 (decisions by professionals about mental health facility's operations afforded deference and violate the Constitution only if professional judgment not exercised). Plaintiff has no evidence that Mr. Hansen failed to exercise professional judgment, or that Mr. Hansen's judgment

11

was a "substantial departure from accepted professional judgment."

Estate of Cole v. Pardue, 94 F.3d 254, 261-62 (7th Cir. 1996).

Plaintiff argues that he has never been convicted of raping children and has yet to be adjudicated as a sexually violent person. He takes issue with the accuracy of the psychological report, contending that he has been convicted of only two charges: aggravated criminal sexual abuse of a 13-16 year old victim and sexual abuse. However, Plaintiff's therapist's are not restricted to considering only Plaintiff's convictions in deciding whether visits with minors should be allowed. They may consider all of Plaintiff's past and present behavior. Evidence beyond a reasonable doubt that Plaintiff's reported criminal history is completely accurate is not required before the therapists may consider that history. As to whether the minors Plaintiff wishes to visit meet Plaintiff's victim profile, Mr. Hansen explains that this factor is not dispositive: targeting victims outside the profile is not uncommon. *See* Wirsching, 360 F.3d at 1201 (deference was owed professional judgment that sex offender's visit with his child could be detrimental to child and offender, even if child was not

part of victim profile).

Plaintiff objects to Mr. Hansen's affidavit on the grounds that Mr. Hansen is not a defendant in this case and was not disclosed as a witness. Mr. Hansen's signature, however, is disclosed on the form denying Plaintiff's visitation request, which Plaintiff has had since the inception of this case.  Plaintiff was also aware of Mr. Hansen's involvement because Mr. Hansen was Plaintiff's primary therapist when Plaintiff requested the visit in 2009.  Mr. Hansen's affidavit causes no unfair prejudice to Plaintiff, and Mr. Hansen does not need to be a defendant in order for Defendants to rely on his affidavit.

Plaintiff also challenges Mr. Hansen's qualifications, asserting that Mr. Hansen states that he has a masters degree but has maintained in another case that he has a doctorate.  This dispute is immaterial. Plaintiff has no evidence that Hansen is not a licensed professional counselor who is qualified to make the decision at issue.

Plaintiff also seems to contend that the entire treatment team was required to exercise their professional judgments, and therefore affidavits

from each person on the treatment team are required.  Plaintiff is correct that Mr. Hansen cannot speak for the other team members, but Mr. Hansen can aver to his own reasons for denying the visits.  The entire treatment team was not constitutionally required to weigh in on the decision.

Plaintiff also argues that his therapists cannot consider him a sexually violent person until he is adjudicated a sexually violent person. He seems to be assailing Mr. Hansen's reliance on the report prepared for the state court detention proceedings.  As discussed above, the therapists may consider information from all sources, not just the sources rigorously tested in a court of law.  Mr. Hansen's decision on visitation is not a de facto adjudication that Plaintiff is a sexually violent person.

Plaintiff also points out that minor visitors will not be at risk because of the presence of security guards and cameras.  He contends that a non-contact room could be used.  Defendants do not address this possibility.  While security guards, cameras, and non-contact rooms would lessen the physical risk presented to a minor, that does not obviate

Mr. Hansen's legitimate concern for the safety of the minors.  In any event, Mr. Hansen does not need to justify his decision on security grounds because he has already justified the decision on therapeutic grounds.  The Court will not disturb this exercise of professional judgment.

Plaintiff also argues that Mr. Hansen's stated concerns are pretextual.  He reasons that, if Mr. Hansen were truly concerned, then all communication with minors would be barred, including the letters and phone calls which Plaintiff is currently allowed.  But this argument actually cuts against Plaintiff.  The existence of other alternatives to communicate with the minors weighs in favor of the restriction's constitutionality.  Overton, 539 U.S. at 135 ("Were it shown that no alternative means of communication existed, though it would not be conclusive, it would be some evidence that the regulations were unreasonable.").  The Supreme Court in Overton found that inmates without visitation rights had alternatives such as phone calls and letters, and that the existence of those alternatives supported the

constitutionality of the visitation restriction.  Id.  Additionally, internal

inconsistencies are not a reason to disturb the deference owed to the

therapists.  See Mays v. Springborn, 575 F.3d 643 (7th Cir.

2009)(upholding removal of magazine pages depicting prison riot even

though prisoners were allowed to watch tv shows about riots:"the

deference we afford prisons permits such seeming inconsistencies").

Plaintiff may even be able to lift his restriction by consenting to and

advancing through sex offender therapy and by consenting to a PPG,

which would allow for a more current and accurate evaluation.

In short, Defendants have demonstrated a "valid, rational

connection" between the restriction and a legitimate concern for safety or

rehabilitation.  They have also demonstrated the exercise of professional

judgment, which must be given deference.  Plaintiff's arguments are not

enough to disturb that deference.  Summary judgment must therefore be

granted to Defendants.

IT IS THEREFORE ORDERED:

1) Defendants' supplemental motion for summary judgment is

granted (d/e 60).  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  All other pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.  All deadlines and settings on the Court's calendar are vacated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal and be accompanied by a brief explaining the ground for appeal.  See Fed. R. App. P. 24(a)(1)(c).

ENTERED:        October 16, 2012

FOR THE COURT:

s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE

17